ROBERT CAMPBELL, Appellant, v. CHAS. H. VANSTONE, Respondent.

**Kansas City Court of Appeals, January 10, 1898.**

Real Estate Broker: COMMISSIONS: EVIDENCE: DEMURRER. A real estate broker, to be entitled to commissions, must show by competent evidence that a sale or exchange of the property had been effected by and through him and a demurrer to the evidence was rightfully sustained in this case since it failed to make such showing.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Harvey & Gower* and *Leslie Orear* for appellant.

(1) The court erred in sustaining the demurrer to plaintiff's evidence for the reason that plaintiff showed a *prima facie* right of recovery. "Where there is any substantive evidence on an issue of fact, its determination is a matter for the jury." *Gutridge v. R'y*, 105 Mo. 520; *Finch v. Ullman*, 105 Mo. 255; *Burger v. R'y*, 112 Mo. 238. (2) If property is placed with a real estate agent for sale, and a sale is brought about through his exertions or agency, he is entitled to his commissions, even though the final negotiations were conducted without his knowledge." *Henderson & Jones v. Mace*, 64 Mo. App. 393; *Brennan v. Roach*, 47 Mo. App. 578, and authorities cited.

*Davis & Duggins* for respondent.

Taking all the testimony offered in behalf of appellant, it wholly fails to show that any sale was effected

by the appellant. He may have advertised the property to a certain extent, but by the terms of the contract he was to be paid $25 for such work.

SMITH, P. J.—The defendant, the owner of a flour mill and elevator, entered into a written contract with the plaintiff, a real estate agent, whereby the latter was constituted an agent to sell the mill and elevator STATEMENT. of the former. The contract provided that in the event a *sale or exchange* of said mill and elevator was "*effected by or through the plaintiff*" that the defendant would pay him a five per cent commission on the amount for which said mill and elevator was sold. Shortly after the contract was entered into, the plaintiff had photographs made of the mill and elevator, advertised the same, and entered into correspondence and negotiation with several parties with the view of making a sale. Notwithstanding the plaintiff's efforts, it does not appear that he succeeded in finding anyone who was willing to purchase the property.

The defendant saw an advertisement of one Fullenwider in some newspaper, the exact nature of which does not appear, which caused him to write to Fullenwider, who responded thereto by letter. The defendant showed this letter to plaintiff and inquired of him what he thought of it. It seems a number of letters were written by defendant to Fullenwider and that the plaintiff was consulted with in respect to the same. Finally Fullenwider, with one Smith, came to Marshall, where the property was situated, and the defendant not being at home, they called on the plaintiff, who informed them that he was the agent for the sale of the property, and that he would show it to them, which it appears he did. Fullenwider and Smith, however, later on met defendant and talked with him about

exchanging certain lands in the state of Tennessee and lots in Carondelet for the defendant's mill and elevator, but no agreement was then reached.

Other correspondence ensued between the defendant and Fullenwider and Smith which influenced the defendant to go to St. Louis for the purpose of there further conducting the negotiation in person. Before the defendant took his departure he caused the plaintiff to write a deed conveying the mill and elevator property and also a deed of trust, which instruments he desired to carry with him to St. Louis that he might have them near by in the event that an exchange should be agreed upon. In the same connection the defendant outlined to the plaintiff the nature of a telegram and letter which he requested to be written and sent to him at St. Louis. The plaintiff complied. The letter stated that the "milling company would give $15,000 for the property and might be squeezed to one or two thousand more." It further appears that no one had offered $15,000 for the defendant's property and that the statement in the letter to that effect was false and misleading and known to be so by both plaintiff and defendant at the time it was written. The letter was contrived and intended by both plaintiff and defendant to assist the defendant in inducing Fullenwider and Smith to agree to the exchange of properties on terms deemed advantageous by defendant to him.

The negotiations thus conducted resulted in the exchange of properties and this action was brought by plaintiff to recover five per cent commission on the amount for which the mill and elevator property was taken in the exchange. There was a trial at which, on the conclusion of the plaintiff's evidence, the court, by an instruction, directed the jury to find for defendant, and accordingly there was a verdict and judgment and plaintiff appealed.

The sole and only question which is presented for our determination is whether or not the trial court erred in instructing the jury that under the evidence the plaintiff was not entitled to recover.

To entitle the plaintiff to recover it devolved on him to show by competent evidence that a sale or exchange of the defendant's mill and eleva-

REAL estate broker: commissions: evidence: demurrer.

tor property had been effected by or through him, and this we think he has not done. It must be admitted that he was active in his efforts to effect a sale or exchange of the defendant's property, but it appears that all of his efforts were in vain. If plaintiff had shown, as we think he did not, that the exchange of the defendant's property for that of Fullenwider and Smith had been brought about by his exertion, or that he had introduced Fullenwider and Smith to defendant or given their names, whereby such exchange had been effected, he would be entitled to the commissions claimed. *Henderson v. Mace*, 64 Mo. App. 393; *Wetzell v. Wagoner*, 41 Mo. App. 509; *Jones v. Berry*, 37 Mo. App. 125; *Tyler v. Parr*, 52 Mo. 249.

But the plaintiff's own exertions, as has been stated, all came to naught, and had it not been for those of the defendant himself, the exchange of his property would probably not have been effected with Fullenwider and Smith. It was through the industry and exertions of the defendant and not that of the plaintiff that Fullenwider was found and negotiations opened which resulted in the disposition of the defendant's property. It must be conceded that after the negotiations for the exchange of the defendant's property had been set on foot by the defendant, that the plaintiff, when so requested, gave defendant such counsel and assistance as he could in the conducting of the

same, but this is as far as his connection with the negotiation extended.

Though the object of the sending of the telegram and letter to defendant may have been to overreach Fullenwider and Smith and enable defendant to obtain an undue advantage over them in the exchange of properties, still this nefarious scheme had its origin in the fecund brain of the defendant and the plaintiff was no more than a supple instrument used by defendant to aid him in carrying out that scheme, and for which services it will hardly be contended plaintiff is entitled to commission under the contract, and especially so since it does not appear that defendant would not have succeeded in effecting said exchange, but for the writing and sending to defendant the said telegram and letter. Certainly the exchange effected by defendant is not referable to the action of the plaintiff in writing and sending said telegram and letter.

The plaintiff's services, in assisting and advising the defendant in and about the negotiation of the exchange of his property to Fullenwider and Smith, was no doubt of great value to defendant, and for which he ought to be paid a reasonable compensation, but this must be independent of the contract sued on. No such service was contemplated by the contract. It is true that it provides that the defendant shall reimburse plaintiff in the actual expense, not to exceed $25, incurred by him in his efforts to make a disposition of the defendant's property, if plaintiff shall fail in making such disposition, but this provision can have no reference to the services rendered by the plaintiff to defendant in assisting the latter or conducting to a successful termination negotiations for the exchange of his property where the negotiations had been opened by him, independent of the agency of the former in the matter.

We are unable to discover any error in the action of

the court in giving of said instruction and so affirm the judgment.

All concur.